UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. FRY,<br><br>                              Plaintiff,<br><br>     v.<br><br>AZTEC DOBERMAN PINSCHER CLUB OF SAN DIEGO,<br><br>                              Defendant.<br><br>AND RELATED CROSS ACTION. | Civil No.   11-cv-1329-BTM (DHB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO MODIFY THIS COURT'S SCHEDULING ORDER; AND**<br><br>**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 33]** |

On July 17, 2012, Plaintiff/Counter-Defendant James A. Fry d/b/a Fox Network Systems, DobermanResQ.com and DobermanResQ, Inc. ("Plaintiff") filed a Motion to Modify This Court's Scheduling Order to Allow Plaintiff and Counter-Defendants to File Their First Amended Complaint ("Motion"). (ECF No. 33.) Defendant/Counter-Claimant Aztec Doberman Pinscher Club of San Diego ("Aztec") filed an Opposition to Plaintiff's Motion on August 9, 2012. (ECF No. 34.) Plaintiff filed a Reply on August 17, 2012. (ECF No. 37.) On August 23, 2012, the Court held a hearing on Plaintiff's Motion. (ECF No. 40.)

For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to modify the motion to amend pleadings deadline contained in the Court's February 7, 2012 Scheduling Order Regulating Discovery and Other Pretrial Proceedings ("Scheduling Order") (ECF No. 21). In light of that order, and

- 1 -

because Plaintiff has also moved for leave to file a First Amended Complaint, the Court hereby **RECOMMENDS** that the District Judge assigned to this case **DENY** Plaintiff's motion for leave to file a First Amended Complaint.

## I. BACKGROUND

**A.  Plaintiff's Allegations**

On May 13, 2011, Plaintiff, acting in pro per,[1] filed a Claim in state small claims court seeking to recover $4,750 from Aztec. (ECF No. 1-1 at 3.) Plaintiff alleged that Aztec downloaded ninety-five of Plaintiff's copyrighted images from Plaintiff's website, DobermanResQ.com, and placed the images on Aztec's own website, Aztecdpc.com, without Plaintiff's permission. (*Id.*) Plaintiff contends Aztec was notified by March 7, 2011 to remove the images or be subject to a fine of $50 per image, per year. (*Id.*)

**B.  Aztec's Answer, Counterclaim and Third-Party Complaint**

On June 15, 2011, Aztec removed the action to federal court based on federal question jurisdiction because Plaintiff's copyright claims arise under the federal Copyright Act, 17 U.S.C. § 101 *et seq.* (ECF No. 1 at ¶¶ 5-12.)

On July 2, 2011, Aztec filed an Answer to Plaintiff's Claim and a Counterclaim against Plaintiff. In its Answer, Aztec asserted numerous affirmative defenses, including that "[n]o license agreement exists. Claim for payment for permissive use of images for a fee would constitute a license agreement between Aztec and Plaintiff, and no such license agreement exists." (ECF No. 2 at ¶ 20.) Aztec's Counterclaim also includes a cause of action for declaratory judgment that no licensing agreement exists between Aztec and Plaintiff. (*Id.* at ¶¶ 56-58.)[2]

In addition to denying that any license agreement exists, Aztec denies that Plaintiff is the copyright owner of the disputed images. (*Id.* at ¶ 34.) Aztec alleges that the disputed images "were created by the then chairperson of the Aztec Doberman Rescue program, an established and recognized program of Aztec." (*Id.* at ¶ 41.) "In the course of carrying out the duties of the chairperson of Aztec's

---

[1] Although initially unrepresented by counsel, Plaintiff has been represented by legal counsel since September 21, 2011. (ECF No. 10.)

[2] In his October 17, 2011 Answer to Aztec's Counterclaim, Plaintiff denies Aztec's allegation that no license agreement exists. (ECF No. 12 at 4:20-5:4.)

1  Doberman Rescue, the chairperson takes photographs of the dogs that are taken into Aztec's rescue
2  program.  Aztec then uses these photographs to promote the dogs for adoption.  Thus, the photographs
3  are taken of Aztec-owned dogs, by Aztec Doberman Rescue committee members, using Aztec's camera,
4  at Aztec authorized kennels."  (*Id.* at ¶ 42.)

5  On July 2, 2011, Aztec also filed a Third-Party Complaint against Plaintiff individually and
6  doing business as DobermanResQ.com and DobermanResQ, Inc.  (ECF No. 3.)  The Third-Party
7  Complaint asserts the same factual allegations as the Counterclaim.  In addition, Aztec alleges in its
8  Third-Party Complaint that after Plaintiff offered to display photos of Aztec's rescue dogs on his
9  website, Aztec supplied Plaintiff with the original digital photographic files of Aztec's rescue dogs.  (*Id.*
10 at ¶ 11.)  Aztec contends Plaintiff then performed minor modifications (cropping and/or altering their
11 size) to the original photos before placing the disputed images on his website.  (*Id.*)

12 **C.    Scheduling Order**

13 On February 7, 2012, the Court issued a Scheduling Order Regulating Discovery and Other
14 Pretrial Proceedings ("Scheduling Order"). (ECF No. 21.) The Scheduling Order required, among other
15 things, that any motion to amend pleadings be filed no later than February 27, 2012.  (*Id.* at 1:20-21.)

16 **D.    Plaintiff's Motion to Modify Scheduling Order**

17     1.    <u>Plaintiff's Motion</u>

18 Plaintiff filed the instant Motion on July 17, 2012, nearly five months after the parties' deadline
19 to file a motion to amend pleadings had expired.  Plaintiff requests that the Court modify the Scheduling
20 Order and permit Plaintiff to file a First Amended Complaint.  (ECF No. 33 at 2:7-8.)  Plaintiff's
21 proposed First Amended Complaint (ECF No. 33-2) contains three causes of action: (1) Copyright
22 Infringement; (2) Breach of the Covenant of Good Faith and Fair Dealing; and (3) Misrepresentation in
23 violation of 17 U.S.C. § 512(f).  (*Id.* at ¶¶ 24-58.)  Plaintiff asserts several reasons why his Motion
24 should be granted.

25 First, good cause exists to modify the Scheduling Order because Plaintiff did not become aware
26 of the facts supporting the First Amended Complaint until the June 11, 2012 Mandatory Settlement
27 Conference. (ECF No. 33-1 at 2:6-8.)  Specifically, Plaintiff claims that it was not until the Mandatory
28 Settlement Conference that his attorney, Donald McInnis, learned that Aztec had used Plaintiff's

website, DobermanResQ.com, to upload a considerable number of the disputed images. (*Id.* at 3:3-8; *see also* Decl. Donald McInnis, ECF No. 33-3 at ¶ 4.) Prior to the Mandatory Settlement Conference, Plaintiff's counsel believed that all of the disputed images were "exchanged in person, via email or other similar electronic means." (ECF No. 33-1 at 5:6-7.) Plaintiff claims that during the Mandatory Settlement Conference, Aztec's counsel provided Mr. McInnis with the pictures that were specifically uploaded by Aztec to DobermanResQ.com. (ECF No. 33-1 at 3:8-9; ECF No. 33-3 at ¶ 4, Ex. B.) Based on this "settlement package" provided by Aztec's counsel, Plaintiff now claims that Aztec breached a licensing agreement located on Plaintiff's website[3] and that Aztec violated the good faith provision of the Digital Millennium Copyright Act. (ECF No. 33-1 at 3:12-14.)

Second, there will not be any prejudice to Aztec because "no trial date has been set, no additional discovery will be needed and the discovery cut off is not until October 5, 2012." (*Id.* at 2:9-11.) According to Plaintiff, no additional written discovery will be needed because "the facts supporting [the proposed new] causes of action can be acquired through depositions which [Plaintiff has] yet to schedule" and which Plaintiff will need to take regardless of whether leave to amend is denied. (*Id.* at 3:20-21; 6:11-14.) Plaintiff claims that Aztec "will have more than enough time to properly prepare and defend the additional causes of action [Plaintiff] wish[es] to add." (*Id.* at 6:16-17.) Plaintiff contends that the proposed amendments would not cause undue delay. (*Id.* at 9:5-12.)

Third, permitting Plaintiff to amend his Complaint "will facilitate settlement as the additional causes of action will aid in forcing all parties to soften their stance and attempt to settle this matter." (*Id.* at 2:12-14.) In fact, although Plaintiff's counsel previously viewed settlement as "imminent," Plaintiff now believes that "settlement no longer seems attainable in the short term unless [Plaintiff is] allowed to amend [his] complaint. [Plaintiff] believe[s] that by amending the complaint, [Aztec] will be forced to alter its position and become more reasonable in attempting to settle this matter." (*Id.* at 5:11-17.)

Fourth, Plaintiff "will be greatly prejudiced" if he is not permitted to file the First Amended Complaint because he "will lose two viable causes of action despite being diligent in litigating this

---

[3] Plaintiff attaches the licensing agreement, titled "Uploader Form and Copyright Agreement," as Exhibit B to the proposed First Amended Complaint. (ECF No. 33-2 at 19.)

1 matter." (*Id.* at 4:1-3.)

2 Fifth, good cause exists under Rule 16(b)(4) of the Federal Rules of Civil Procedure[4] to amend
3 the Scheduling Order. (*Id.* at 4:13-5:19.) Specifically, Plaintiff claims that he has been diligent in this
4 matter, including serving "several sets of written discovery" and participating in multiple settlement
5 conferences. (*Id.* at 4:21-23.) Moreover, Plaintiff notes that he was not represented by counsel at the
6 time he filed his Claim in state small claims court, and that Plaintiff's counsel has attempted "to keep
7 the subject litigation's costs down based on the fact that settlement seemed imminent." (*Id.* at 5:10-13.)

8 Sixth, the proposed amendments are not sought in bad faith. (*Id.* at 7:2-8.)

9 Finally, the proposed amendments are not futile. (*Id.* at 7:10-9:3.)

10     2.    <u>Aztec's Opposition</u>

11 Aztec sets forth various arguments in its Opposition to Plaintiff's Motion. First, Plaintiff's
12 "upload license agreement" is being produced for the first time in connection with the instant Motion,
13 despite Plaintiff allegedly testifying in state small claims court that there were no written or oral license
14 agreements between the parties. (ECF No. 34 at 2:3-4; 3:22-23.)

15 Second, Plaintiff's Rule 26(a)(1) initial disclosures, dated October 19, 2011, identified a
16 document titled "Any waiver of copyright claims for images uploaded onto DOBERMANRESQ.com
17 which relate to this litigation in any way." According to the initial disclosures, the document was in
18 Plaintiff's possession at the time the initial disclosures were provided to Aztec. However, upon request
19 by Aztec's counsel for a copy of this document, Plaintiff's counsel represented that all documents
20 identified in Plaintiff's initial disclosures had been produced. (ECF No. 34 at 2:7-13; ECF No. 34-1 at
21 6:13-14.)

22 Third, Aztec takes issue with Plaintiff's use of the "settlement package" that was provided to
23 Plaintiff in connection with the Mandatory Settlement Conference. Aztec contends that because the new
24 facts alleged by Plaintiff were obtained during the course of settlement discussions, Plaintiff "is
25 absolutely prohibited from using that information against Aztec" because "to allow it would be in
26 complete contradiction of the public policy and laws protecting parties from opposing parties using
27 information shared at settlement conferences against that party." (ECF No. 34 at 5:19-28.)

28

---

[4] All subsequent references to "Rules" shall refer to the Federal Rules of Civil Procedure.

1  Fourth, the "settlement package" documents "in no way, shape or form refer to Aztec
2 'uploading'" any of the disputed images from Plaintiff's website. (*Id.* at 6:1-6.)

3  Fifth, there is no good cause justifying Plaintiff's delay in seeking leave to modify the Scheduling
4 Order. In support of this contention, Aztec claims: (a) the amendments are being sought to extort an
5 unjust settlement from Aztec (*id.* at 6:23-7:8); and (b) Plaintiff was not diligent in seeking leave to
6 amend because, even if the "settlement package" provided Plaintiff with new facts (a claim that Aztec
7 affirmatively rejects), the proposed new causes of action are based on an "upload license agreement" that
8 has purportedly been in existence since 2008, and "Plaintiff's counsel clearly was not diligent in
9 managing and understanding this case" (*id.* at 7:10-8:7). Aztec also contends that Plaintiff is seeking
10 to amend his copyright infringement cause of action to increase the damages claim from $4,750 to over
11 $25,000 plus punitive damages, despite the fact that the proposed revision has nothing to do with the
12 license agreement and should have been brought earlier in this litigation. (*Id.* at 8:10-20.)

13  Sixth, Aztec will be severely prejudiced by the late amendments because initial disclosures have
14 been exchanged, and expert designations and written discovery have been completed. In support of this
15 contention, Aztec claims: (a) the proposed amendments broaden the scope of Plaintiff's claims
16 significantly and there is a substantial increase in the damages sought by Plaintiff (*id.* at 9:16-16-18);
17 (b) the proposed amendments will require Aztec to engage in costly discovery efforts in order to prepare
18 its defense of "entirely new theories of liability and significantly higher claimed damages" (*id.* at 9:19-
19 21); and (c) Aztec did not engage an expensive copyright expert because its maximum exposure under
20 Plaintiff's original claim was $4,750 (*id.* at 10:5-8).

21  Seventh, the proposed amendments are futile in that they each fail to state a claim for relief. (*Id.*
22 at 10:21-11-27.)

23  Finally, Aztec claims that Plaintiff should be sanctioned for his failure to comply with Rule
24 26(a)'s initial disclosure requirements when he failed to disclose and produce the "upload license
25 agreement." (*Id.* at 12:1-13:6.)

26  3.  <u>Plaintiff's Reply</u>

27  Plaintiff's Reply consists primarily of the same arguments set forth in his Motion. In addition
28 to those arguments, however, Plaintiff contends: (1) Aztec will not need to designate additional experts

1. (ECF No. 37 at 2:18-19); (b) Aztec misstates Rule 16(b)'s "good cause" standard, which does not require Plaintiff "to discover and realize the significance of every communication between [Plaintiff] and [Aztec]" (*id.* at 3:13-14); (c) prior to the Mandatory Settlement Conference, Plaintiff's counsel believed in good faith "that the disputed images were exchanged in person, via email or other similar electronic means" and that "[g]iven the frequency of these methods of exchange, [Plaintiff's] counsel did not foresee that [Aztec] would upload pictures of the Dobermans directly to" Plaintiff's website (*id.* at 4:4-7); (d) Plaintiff's proposed cause of action for copyright infringement is simply an expansion of the original copyright claim and not an amendment (*id.* at 4:17-21); and (e) contrary to Aztec's assertion that it would have to engage a copyright expert, Aztec designated an expert, Terran Beyer, that could provide opinions on the copyright issues raised in the proposed First Amended Complaint (*id.* at 6:14-20).

## II. DISCUSSION

### A.  Legal Standards

Rule 16(b) requires that, "as soon as practicable," district courts issue a scheduling order "limit[ing] the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P 16(b)(2), (3)(A).  A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

Although "Rule 15(a) liberally allows for amendments to pleadings," *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000), that policy does not apply after a district court has issued "a pretrial scheduling order that established a timetable for amending the pleadings, and the deadline [has] expired." *Id.*  Rather, under those circumstances, parties seeking to amend their complaints "must show good cause for not having amended their complaints before the time specified in the scheduling order expired." *Id.* (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992)); *see also Aliota v. Town of Lisbon*, 651 F.3d 715, 719-20 (7th Cir. 2011) (identifying the majority of circuit courts that "apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied").  "This standard 'primarily considers the diligence of the party seeking the amendment.'" *Id.* (quoting *Johnson*, 975 F.2d at 609).

///

"Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). "If that party was not diligent, the inquiry should end." *Id.*; *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

**B.      Analysis**

Fundamental to Plaintiff's Motion is the contention that Plaintiff was not aware of the facts giving rise to the proposed new causes of action until June 11, 2012 when he allegedly became aware of the fact that Aztec had uploaded some of the disputed images to Plaintiff's website. However, Plaintiff fails to articulate how the "settlement package" provided at the Mandatory Settlement Conference informed Plaintiff that Aztec had utilized Plaintiff's image upload page, thus triggering the upload license agreement. Indeed, more than half of the images contained in the "settlement package" were photographs supplied to Aztec in Plaintiff's initial disclosures. The remaining images were from Aztec's archives and were utilized to demonstrate that the Plaintiff had removed Aztec's watermark from the images and modified the photographs by placing Plaintiff's own watermark on them.[5]

On its face, the "settlement package" does not indicate to the Court that any of the images contained therein were uploaded to Plaintiff's website. Moreover, Plaintiff has failed to demonstrate how the production of this seemingly benign document triggered in Plaintiff's mind an understanding that the upload license agreement must have been utilized by Aztec. In other words, there is no nexus between the documents obtained by Plaintiff at the Mandatory Settlement Conference and the proposed amendments. When the Court pressed Plaintiff's counsel on the matter during the hearing on Plaintiff's Motion, counsel simply stated, "I really don't have an answer." The only explanation offered by Plaintiff's counsel was that, upon review of the "settlement package," "something triggered" in his client's mind. This explanation is insufficient to meet Plaintiff's burden of demonstrating good cause

---

[5] During the August 23, 2012 court hearing, Aztec's counsel explained, without objection by Plaintiff's counsel, that the images labeled with "resq" were produced by Plaintiff in his initial disclosures. The remainder were found in Aztec's archives.

to modify the Court's Scheduling Order.

The Court's conclusion is bolstered by the fact that Aztec has, from the outset of this case, consistently taken the position that no license agreement exists between the parties. Although Plaintiff claims to have diligently pursued this litigation by serving "several sets of written discovery" and participating in multiple settlement conferences (*see* ECF No. 33-1 at 4:21-23), Plaintiff has failed to demonstrate that he made any effort to determine whether Aztec had utilized his website's image upload page or otherwise entered into a license agreement. Rather, it appears Plaintiff made a strategic decision to engage in limited discovery in order to keep litigation costs to a minimum. (*Id.* at 5:10-13.) Notably, Plaintiff seeks to add additional causes of action premised upon an "upload license agreement" that he previously denied existed and that he failed to produce in his initial disclosures. The Court also notes that, as represented by Aztec's counsel at the hearing on Plaintiff's Motion, prior to the Mandatory Settlement Conference, Plaintiff was well aware that Aztec was accessing his website, as he blocked Aztec's IP address from logging onto Plaintiff's website and maliciously rerouted Aztec to pornographic web sites.

Accordingly, the Court determines that Plaintiff has not been diligent and, thus, he has failed to establish good cause for not seeking to amend his Claim before the time specified in the Court's Scheduling Order. *See Coleman*, 232 F.3d at 1294.[6]

### IV. CONCLUSION, ORDER AND RECOMMENDATION

After a thorough review of the arguments and evidence presented to the Court and based on the foregoing, the Court hereby **DENIES** Plaintiff's request that the Court modify the deadline for parties to file a motion to amend pleadings as set forth in the Court's February 7, 2012 Scheduling Order.

Further, because Plaintiff has not established good cause for not seeking to amend his Claim before the time specified in the Court's Scheduling Order, the Court hereby **RECOMMENDS** that

---

[6] As noted above, if a "party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. Notwithstanding, the Court notes that Aztec would be severely prejudiced if Plaintiff were allowed to amend his Claim this late in the proceedings. Written discovery has been completed and the Pretrial Conference is scheduled for December 18, 2012. In addition, the proposed amendments substantially change the scope of this lawsuit. Specifically, Plaintiff's present Claim alleges damages in an amount of less than $5,000. If Plaintiff is allowed to amend his pleading, his potential damages increase to more than $25,000. More importantly, Aztec would be required to hire experts to address the new website uploading allegation and to evaluate the underlying damages alleged in the proposed causes of action.

1  Plaintiff's request for leave to file a First Amended Complaint be **DENIED**.

2  In light of the Court's conclusions, the Court declines to address the parties' arguments regarding
3  the merits of the proposed amendments.

4  This Report and Recommendation will be submitted to the United States District Court Judge
5  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written
6  objections with the Court and serve a copy on all parties on or before **September 25, 2012**. The
7  document should be captioned "Objections to Report and Recommendation." Any reply to the
8  objections shall be served and filed no later than **October 2, 2012**. The parties are further advised that
9  failure to file objections within the specified time may waive the right to raise those objections on appeal
10 of the Court's Order. *See Smith v. Frank*, 923 F.2d 139, 141 (9th Cir. 1991).

11 **IT IS SO ORDERED.**

12 DATED: September 11, 2012

DAVID H. BARTICK
United States Magistrate Judge